UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| VICTOR NUNEZ, | ) | CASE NO. 1:16CV1931; |
| | ) | CASE NO. 1:17CV2325 |
| Petitioner, | ) | |
| | ) | JUDGE SARA LIOI |
| v. | ) | Magistrate Judge George J. Limbert |
| | ) | |
| JOHN COLEMAN, | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| Respondent. | ) | |

This matter is before the undersigned on a petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by Petitioner Victor Nunez ("Petitioner") in Case No. 1:16CV1931 and an additional petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by Petitioner in Case No. 1:17CV2325.[1] *Nunez I* #1; *Nunez II* #1. The cases were joined and referred to the undersigned for preparation of the instant Report and Recommendation. *Nunez II* #6. Respondent John Coleman ("Respondent") filed a return of writ in *Nunez I* and subsequently filed a supplemental return of writ in *Nunez I*. *Nunez I* #8; *Nunez I* #20. Petitioner did not file a traverse in either case. For the following reasons, the undersigned RECOMMENDS that the Court dismiss Petitioner's petitions for a writ of habeas corpus (*Nunez I* #1; *Nunez II* #1) in their entirety with prejudice.

## I. SYNOPSIS OF THE FACTS

The Eighth District Court of Appeals, Cuyahoga County, Ohio, set for the facts of this case on direct appeal. These binding factual findings "shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999). As set forth by the Eighth District Court of Appeals, the facts are:

> J.L. is [Petitioner's] sister-in-law. She testified about an incident that occurred between June 1 and August 31, 2008. J.L. testified that she was asleep on her

---

[1] CM/EFC entries in Case No. 1:16CV1931 are cited under "*Nunez I*" and CM/ECF entries in Case No. 1:17CV2325 are cited under "*Nunez II*."

mother's couch when [Petitioner] woke her up and began touching her breasts. He then asked her to go to the basement, but she refused. [Petitioner] took off his pants as well as J.L.'s and began engaging in sexual activity with her. J.L. testified that she told [Petitioner] to stop, but he continued.

J.L. also testified about an incident that occurred between August 1 and September 30, 2008. According to J.L., she was again sleeping on her mother's couch when [Petitioner] woke her. At this point, he asked J.L. to accompany him to the abandoned house next door to J.L.'s mother's house. J.L. first refused, but [Petitioner] threatened to call her probation officer and hurt her children if she did not comply. After they entered the abandoned house, one of [Petitioner]'s acquaintances also entered the house without J.L.'s knowledge. [Petitioner] grabbed J.L.'s ponytail and forced her to her knees. [Petitioner]'s acquaintance then forced his penis into J.L.'s mouth while [Petitioner] engaged in vaginal intercourse with her. J.L. testified that [Petitioner] and his acquaintance then switched places and continued to rape her.

Several witnesses testified to an event that occurred during the weekend of February 13 to February 15, 2009. N.J., who is J.L.'s cousin and was visiting from Kentucky, testified that on February 13, 2009, she decided to spend the night at J.L.'s apartment while her mother and father stayed with other family members. At some point during the night, [Petitioner] and his wife, who is J.L.'s sister, arrived at J.L.'s apartment with a bottle of alcohol. J.L. and [Petitioner] were the only individuals who drank the alcohol. [Petitioner] and his wife left later that evening.

J.L.'s mother testified that, at around 3:00 or 3:30 a.m. on February 14, 2009, she and N.J.'s mother were playing cards when [Petitioner], who was supposed to be sleeping, came out and said he was going to the emergency room to have his eyes examined. Once [Petitioner] left, J.L.'s mother told N.J.'s mother that she felt [Petitioner] was "up to no good" and was not going to the hospital. J.L.'s mother called MetroHealth Medical Center, where [Petitioner] was allegedly going, several times throughout the night, but the hospital had no record of him ever being admitted as a patient.

J.L. and N.J. both testified that at around 3:30 a.m. on February 14, 2009, they were sitting in J.L.'s apartment talking when J.L. received a phone call from [Petitioner], who indicated that he and his wife were outside and needed J.L. to let them in. After opening the apartment door, J.L. saw [Petitioner], but his wife was not there. J.L. attempted to shut the door, but [Petitioner] forced his way inside the apartment.

J.L. testified that she went to her bedroom to avoid [Petitioner], but he followed her. [Petitioner] came into her bedroom and began "ripping" her clothes off. She told him to stop, but he threw her on the bed and held her there. [Petitioner] pulled her hair and repeatedly asked whether she would like her cousin to watch what he was doing. J.L. testified that, at one point, [Petitioner] used his knees to hold her down and repeatedly shoved his penis into her mouth. She was unable to escape because of the force [Petitioner] was exerting against her. [Petitioner] then changed position and engaged in vaginal intercourse with her.

> N.J. testified that after [Petitioner] forced his way into J.L.'s apartment, she excused herself to go to the restroom. When she returned, J.L. and [Petitioner] were in the bedroom with the door closed. N.J. heard J.L. screaming for [Petitioner] to stop and leave her alone. N.J. did not call the police because she was afraid of [Petitioner], so she laid on J.L.'s couch and pretended to be asleep. Once [Petitioner] emerged from J.L.'s bedroom, he walked over to the couch where she was lying. [Petitioner] then began to digitally penetrate her vagina, and she was afraid so she put a blanket over her face. After the digital penetration, [Petitioner] engaged in vaginal intercourse with her. Finally, he engaged in oral sex with her. N.J. testified that she did not scream, tell [Petitioner] to stop, or attempt to push him away because she was petrified.
>
> J.L. testified that she walked out of her bedroom and saw [Petitioner] on top of N.J. She did not call the police or seek other assistance because [Petitioner] had threatened to call her probation officer and had threatened her children.
>
> [Petitioner] called J.L. shortly after he left her apartment and told her that he had informed his mother and sisters of what had happened and, should he be arrested, they would hurt J.L. and her children.
>
> On February 15, 2009, N.J. and her family returned to Kentucky. N.J. then went to her best friend's house and told her what happened. Her friend called N.J.'s mother and asked her to come over. N.J. told her mother what had happened. Her mother then took her to the hospital for a physical examination. DNA samples collected during the examination matched DNA samples provided by [Petitioner].
>
> N.J.'s father called J.L.'s mother to tell her that the two women had been raped. After learning who had raped the women, J.L.'s mother immediately called J.L.'s sister, who is [Petitioner]'s wife, to inform her of the perpetrator's identity. According to [Petitioner]'s wife, he admitted to engaging in sexual intercourse with the women, but maintained that the activities were consensual.
>
> [Petitioner]'s wife testified that although she had no idea [Petitioner] was having a sexual relationship with her sister, she did know that [Petitioner] and her sister had a congenial relationship. For example, [Petitioner] and J.L. would buy drugs together, would go to the store together, and would go to the abandoned house next door to J.L.'s mother's house in order to smoke marijuana.
>
> [Petitioner]'s sister also testified at trial. She testified that she was sexually molested as a child and that [Petitioner] had been a constant source of comfort to her at the time. She also testified that, although she did not know that [Petitioner] and J.L. were having a sexual relationship, J.L. and [Petitioner] got along very well and spent time alone together.

*State v. Nunez*, 8th App. Dist. Cuahoga No. 93971, 2010-Ohio-5589.

## II. PROCEDURAL HISTORY

In January 2009, the Cuyahoga County Grand Jury issued an indictment charging Petitioner with: five counts of rape (Counts 1, 4, 8, 9, and 12); four counts of kidnapping, with sexual motivation specifications (Counts 2, 5, 10, and 13); three counts of intimidation of a crime victim or witness (Counts 3, 6, and 11); and one count of aggravated burglary (Count 7). *Nunez I* #8-1 at 7. Petitioner pleaded not guilty and filed a waiver of trial by jury on the sexually violent predator specifications of Counts 2, 5, 10, and 13. Petitioner was ultimately found guilty of: one count of aggravated burglary (Count 7); three counts of rape (Counts 8, 9, and 12); two counts of kidnapping, with sexual motivation specifications (Counts 10 and 13); and one count of intimidation of a victim or witness (Count 11). *Id.* at 16. Petitioner was acquitted of the remaining charges and the trial court found him not guilty of the sexually violent predator specifications. *Id.* at 18. On August 31, 2009, the trial court sentenced Petitioner to an aggregate term of twenty-two years incarceration. *Id.*

On August 18, 2009, Petitioner attempted to file a *pro se* motion for a new trial. *Nunez I* #8-1 at 20. The record does not reflect that this motion was accepted for filing. Petitioner's counsel filed a second timely motion for a new trial on August 25, 2009. *Id.* at 22. The trial court denied the motion on December 7, 2009. *Id.* at 40.

On September 29, 2009, Petitioner, through counsel, filed a timely appeal to the Eighth District Court of Appeals. *Nunez I* #8-1 at 41. The Eighth District Court of Appeals overruled each assignment of error, but remanded the case to the trial court for re-sentencing. *Id.* at 98. Petitioner was again sentenced to an aggregate term of twenty-two years by the trial court on December 28, 2010. *Id.* at 124. Petitioner did not file a timely appeal, however, he did file an appeal in the Eighth District Court of Appeals on March 23, 2011. *Id.* at 126. On April 8, 2011, the Eighth District Court of Appeals denied leave to appeal and dismissed the appeal. *Id.* at 150. Petitioner filed an appeal to

the Supreme Court of Ohio on April 6, 2012. *Id.* at 152. The Supreme Court of Ohio denied leave to file a delayed appeal and the appeal was dismissed on May 23, 2012. *Id.* at 160, 189.

Petitioner filed his first petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on April 12, 2012. *Nunez I* #8-1 at 190. This Court denied Respondent's motion to dismiss based on untimeliness of the petition and ordered further briefing. *Nunez I* #8-2 at 102. Ultimately three of four of Plaintiff's grounds for relief were dismissed and a conditional writ was ordered that required the state courts to grant leave to Petitioner to file a delayed appeal for his December 2010 re-sentencing and appoint counsel for the appeal. *Id.* at 174.

Based on this Court's order, the trial court appointed counsel and ordered the notice of delayed appeal to be filed by April 30, 2015. *Nunez I* #8-2 at 203. The notice of delayed appeal was filed by Plaintiff's counsel on April 24, 2015. *Id.* at 212. The Eighth District Court of Appeals granted leave to file the delayed appeal. *Id.* at 220. On March 3, 2016, the Eighth District Court of Appeals affirmed the judgment of the trial court. *Id.* at 259. Petitioner, acting *pro se*, filed an appeal to the Supreme Court of Ohio on March 30, 2016. *Id.* at 272. On June 15, 2016, the Supreme Court of Ohio declined to accept jurisdiction pursuant to S.Ct.Prac.R. 7.08(B)(4). *Id.* at 297.

Petitioner filed a motion for a new trial on April 8, 2016. *Nunez I* #8-3 at 7. The trial court denied the motion on August 8, 2016. *Id.* at 70. Petitioner then appealed to the Eight District Court of Appeals. *Id.* at 78. On June 29, 2017, the Eighth District Court of Appeals affirmed the judgment of the trial court. *Nunez I* #20-1 at 3. Petitioner appealed the decision to the Supreme Court of Ohio on July 14, 2017. *Id.* at 26. On October 11, 2017, the Supreme Court of Ohio declined jurisdiction and dismissed the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4). *Id.* at 69.

### III.     FEDERAL HABEAS PETITION

Before the Court is Petitioner's second federal habeas petition, submitted by Petitioner on July 1, 2016, and docketed on August 1, 2016, alleging four grounds for relief.[2] *Nunez I* #1. On October 30, 2017, Petitioner filed a third habeas petition containing three additional grounds for relief while his second habeas petition was pending. *Nunez II* #1. Ultimately, the Sixth Circuit determined that the third habeas petition should have been construed as a motion to amend the second habeas petition and remanded the case for further proceedings. *Id.* #5. The Court then joined both cases involving Petitioner's pending habeas claims. *Id.* at #6. The undersigned will address the four claims contained in the second habeas petition and then address the three claims contained in the third habeas petition.

### A. Habeas Petition Filed July 1, 2016 (*Nunez I* #1)

Petitioner alleges the following grounds for relief:

GROUND ONE: DUE PROCESS WAS DENIED WHEN THE TRIAL COURT FAILED TO MAKE MANDATORY FINDINGS WHEN IMPOSING CONSECUTIVE SENTENCES

GROUND TWO: DUE PROCESS WAS DENIED BECAUSE THE JOURNAL ENTRY INCREASED THE AGGREGATE PRISON SENTENCE BY TWO YEARS ABOVE THAT IMPOSED AT THE RESENTENCING HEARING

GROUND THREE: DUE PROCESS WAS DENIED, AND DOUBLE JEOPARDY RIGHTS VIOLATED, WHEN THE TRIAL COURT IMPOSED CONSECUTIVE SENTENCES FOR COUNTS 8 AND 9 (BOTH RAPE CHARGES) AS THEY ARE ALLIED OFFENSES OF SIMILAR IMPORT

GROUND FOUR: COUNSEL PROVIDED INEFFECTIVE ASSISTANCE AT RESENTENCING FOR FAILING TO ASSERT THAT COUNTS 8, 9, AND 10 ARE ALLIED OFFENSES OF SIMILAR IMPORT AND MUST MERGE FOR THE PURPOSES OF SENTENCING

*Nunez I* #1. Additionally, Petitioner attached a brief containing the factual support for his grounds for relief. *Id.* at 17-32.

### B. Habeas Petition Filed October 30, 2017 (*Nunez II* #1)

---

[2]Petitioner states that he submitted his habeas petition to prison staff on July 1, 2016. The filing date for a petition from an incarcerated *pro se* petitioner is the date the petition was handed over to the prison mail system, not the date it was received and docketed by the federal habeas court. *Houston v. Lack*, 487 U.S. 266, 270-72, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988).

> Petitioner alleges the following additional grounds for relief:
>
> GROUND ONE: FAILURE TO GRANT MOTION FOR NEW TRIAL, OR AT LEAST HOLD EVIDENTIARY HEARING ON THE SAME, VIOLATED PETITIONER'S RIGHTS UNDER THE CONSTITUTION OF THE UNITED STATES
>
> GROUND TWO: INDICTMENT IS FATALLY DEFECTIVE, IN VIOLATION OF PETITIONER'S RIGHTS UNDER THE CONSTITUTION OF THE UNITED STATES
>
> GROUND THREE: JURY DEADLOCK INSTRUCTION VIOLATED PETITIONER'S RIGHTS UNDER THE CONSTITUTION OF THE UNITED STATES

*Nunez II* #1. Again, Petitioner attached a brief containing the factual support for his grounds for relief. *Id.* #1-1.

## IV. PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a writ of federal habeas corpus. As Justice O'Connor noted in *Daniels v. United States*, "[p]rocedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." 532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

### A. Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run from the latest of:

> A.  The date on which the judgment became final by the conclusion of direct review or the expiration of time for seeking such review;
>
> B.  The date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the application was prevented from filing by such State action;
>
> C.  The date on which the constitutional right asserted was initially recognized by the Supreme Court if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

      D.      The date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

### B. Exhaustion of State Remedies

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004). The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987). To exhaust a claim, a petitioner must present it "to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *see also McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). General allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present" claims that specific constitutional rights were violated. *McMeans*, 228 F.3d at 681 (citing *Petrucelli v. Coombe*, 735 F.2d 684, 688–89 (2nd Cir. 1984)).

In order to have fairly presented the substance of each of his federal constitutional claims to the state courts, the petitioner must have given the highest court in the state in which he was convicted a full and fair opportunity to rule on his claims. *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). A petitioner fairly presents the substance of his federal constitutional claim to the state courts by: (1) relying upon federal cases that use a constitutional analysis; (2) relying upon state cases using a federal constitutional analysis; (3) phrasing his claim in terms of constitutional law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4) alleging facts that are obviously within the mainstream of constitutional law. *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)); *see also Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993), *cert. denied*, 509 U.S. 907 (1993). In *Harris v. Lafler*, the Sixth Circuit laid out the options that a district court may pursue in dealing with a petition that contains unexhausted claims:

-8-

> When faced with this predicament in the past, we have vacated the order granting the writ and remanded the case to the district court so that it could do one of four things: (1) dismiss the mixed petition in its entirety, *Rhines*, 544 U.S. at 274, 125 S.Ct. 1528; (2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims, *id.* at 275, 125 S.Ct. 1528; (3) permit the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims, *id.* at 278, 125 S.Ct. 1528; or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit, 28 U.S.C. § 2254(b)(2).

553 F.3d 1028, 1031–32 (6th Cir. 2009). The Supreme Court has held that "the petitioner has the burden ... of showing that other available remedies have been exhausted or that circumstances of peculiar urgency exist." *Darr v. Burford*, 339 U.S. 200, 218–19 (1950), overruled in part on other grounds, *Fay v. Noia*, 372 U.S. 391 (1963). A petitioner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal, or that he is actually innocent of the crime for which he was convicted. *Coleman v. Thompson*, 501 U.S. 722, 748 (1991).

### C. Procedural Default

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). In these cases, "the state judgment rests on independent and adequate state procedural grounds." *Coleman*, 501 U.S. at 730. For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment." *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991)) (emphasis removed). When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition. *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991). In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there are no independent

and adequate state grounds for a state court decision absent a clear statement to the contrary. *Coleman*, 501 U.S. at 735.

Applying this presumption, the Sixth Circuit established a four-pronged analysis to determine whether a claim has been procedurally defaulted under *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). Under the first prong of *Maupin*, there must be a firmly established state procedural rule applicable to the petitioner's claim and the petitioner must not have complied with the rule. *Ford v. Georgia*, 498 U.S. 411, 423–24 (1991). Under the second prong, the last state court to which the petitioner sought review must have invoked the procedural rule as a basis for its decision to reject review of the prisoner's federal claims. *Coleman*, 501 U.S. at 729–30; *Richey v. Mitchell*, 395 F.3d 660 at 678 (2005) (holding that "a lapsed claim survives if the state court overlooked the default and decided the claim anyway"); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004) (holding that if a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review); *Gall v. Parker*, 231 F.3d 265, 310 (6th Cir. 2000) (holding that even if the issue is not raised below, where state supreme court clearly addresses the claim, no procedural bar arises). Under the third prong, a state judgment invoking the procedural bar must rest on a state law ground that is both independent of the merits of the federal claim and is an adequate basis for the state court's decision. *Munson v. Kapture*, 384 F.3d at 313–14. Under the fourth prong, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman,* 501 U.S. at 751. "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), *cert. denied*, 490 U.S. 1068 (1985). If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice. *Smith v. Murray*, 477 U.S. 527 (1986).

> Simply stated, a federal court may review federal claims:
>
>> [T]hat were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel*, 301 F. Supp. 2d 698, 722 (N.D. Ohio 2004).

## V. STANDARD OF REVIEW

If Petitioner's claims overcome the procedural barriers of time limitation, exhaustion, and procedural default, the AEDPA governs this Court's review of the instant case because Petitioner filed the instant § 2254 federal habeas corpus petition well after the AEDPA's effective date of April 26, 1996. *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir.1997), *cert. denied*, 522 U.S. 1112 (1998). Under § 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for the writ of habeas corpus. The AEDPA provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

529 U.S. 362, 412–13 (2000). Furthermore, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*; *see also Bailey v. Mitchell*, 271 F.3d 652, 655–56 (6th Cir. 2001).

> The Sixth Circuit offers the following guidelines for applying the AEDPA limitations:
>
> A. Decisions of lower federal courts may not be considered.
>
> B. Only the holdings of the Supreme Court, rather than its dicta, may be considered.
>
> C. The state court decision may be overturned only if:
>
> 1. It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' [the Supreme Court precedent must exist at the time of petitioner's direct appeal]; or
>
> 2. The state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent'; or
>
> 3. 'The state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case'; or
>
> 4. The state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'
>
> D. Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable. That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.' 'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

> E. Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey*, 271 F.3d at 655–56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice." *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986). The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e). The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact. *Levine*, 986 F.2d at 1514. The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997). Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law. *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000). Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## VI. ANALYSIS

### A. Habeas Petition Filed July 1, 2016 (*Nunez I* #1)

#### 1. Ground One

In his first ground for relief, Petitioner asserts that he was denied due process because the trial court "failed to make mandatory findings when imposing consecutive sentences." *Nunez I* #1 at 24. Petitioner states that the trial court imposed consecutive sentences without makings the findings required by Ohio Revised Code ("O.R.C.") § 2929.14(C)(4). *Id.* Respondent contends

-13-

that Petitioner's first ground for relief requires the Court to impermissibly overrule the state court's interpretation of state law. *Nunez I* #8 at17.

Defendant is correct that Petitioner's first ground for relief is not cognizable on habeas review because Petitioner asks the Court to overrule the state court's interpretation of the state's sentencing laws. The Supreme Court of the United States has explained that "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). Further, it is not the province of a court reviewing a federal habeas petition to re-examine state-court determinations on state-law questions and federal courts are limited to deciding whether a conviction violated the Constitution, law, or treaties of the United States. *Id.* at 67-68. Here, Petitioner is asking for the Court to grant relief because the state court allegedly did not follow the O.R.C. This is a state-court determination on a state-law question and is therefore not cognizable on federal habeas review.

### 2. Ground Two

Petitioner's second ground for relief claims that the trial court's journal entry impermissibly increased his aggregate sentence by two years because the increase in his sentence was not announced in open court. *Nunez I* #1 at 25. Continuing, Petitioner contends that his sentences for Count 8 and Count 11 must run concurrently because the trial court violated the Double Jeopardy Clause. *Id.*

Respondent asserts that the Eighth District Court of Appeals found that the sentence announced in court was not vague and accurately reflected the sentencing entry and that Petitioner was present for the proper announcement of his sentence. *Id.* #8 at 20. Regarding Petitioner's claim of a violation of the Double Jeopardy Clause, Respondent states that Count 8 was a rape charge and Count 11 was a charge of intimidation of a crime victim or witness, and that there is no viable double jeopardy claim. *Id.* at 23. Additionally, Respondent notes that to the extent Petitioner is attempting to raise a claim regarding the consecutive nature of his sentences, such a claim is not cognizable on habeas review. *Id.*

As an initial matter, Petitioner has not shown a violation of the Double Jeopardy Clause of the Fifth Amendment.  Petitioner was convicted of rape in Count 8 and victim intimidation in Count 11.  These are two separate crimes.  As for Petitioner's claim that he was not present for the increase in his sentence, the Eighth District Court of Appeals found that although the trial court did not specifically state that the term imposed for Count 11 was to run consecutively to the term imposed for Count 8, it imposed a sentence consistent with the original sentence, which ran those counts consecutively.  *Nunez I* #8-2 at 266-67.  Continuing, the Eighth District Court of Appeals determined that there was no ambiguity in the record and that the trial court's sentencing entry was consistent with the decision at the sentencing hearing.  *Id.* at 267.  The Eighth District Court of Appeals' decision to dismiss this claim is neither contrary to nor an unreasonable application of clearly established federal law.  *See* 28 U.S.C. § 2254(d).  Additionally, if Petitioner is attempting to claim that his rights were violated based on the consecutive nature of his sentences, this claim is not cognizable on federal habeas review.  *Estelle*, 502 U.S. at 67; *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003).  Accordingly, Petitioner's second ground for relief fails.

### **3.     Ground Three**

In his third ground for relief, Petitioner asserts that the state courts erred by failing to find that two of the rape charges, Count 8 and Count 9, and the kidnapping charge (Count 10) were allied offenses of similar import.  *Nunez I* #1 at 25.  Citing Ohio case law, Petitioner claims that it is clear that Count 8, 9, and 10 are allied offenses of similar import because the oral and vaginal penetration forming the basis for the rape charges were committed during a continuous course of action, as was the kidnapping.  *Id.* at 28.  Petitioner asserts that the Eighth District Court of Appeals erred by finding that since the two rape offenses involved different types of sexual activity they were not allied offenses, despite being committed during the same sexual assault.  *Id.* at 29.

Respondent states that when sentences are imposed in a single prosecution the issue before the state appellate court is whether the Ohio General Assembly intended to authorize cumulative punishments and that if cumulative punishments were intended, there is no violation of the Double Jeopardy Clause. *Nunez I* #8 at 24. Continuing, Respondent asserts that a federal court is bound by a state court's construction of its own statutes when assessing the intent of a state legislature. *Id.* Respondent notes that the state courts considered whether Counts 8, 9, and 10 should merge, and did merge Count 9 and Count 10. According to Respondent the state courts merged some of Petitioner's convictions, but not others, and that precedent from the Supreme Court of the United States and the Sixth Circuit supports the finding that Petitioner's third ground for relief is not cognizable. *Id.* at 25-29.

The Supreme Court of the United States has explained that, with respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than intended by the legislature. *Missouri v. Hunter*, 459 U.S. 359, 366 (1983). Further, the Sixth Circuit has held that "for the purpose of double jeopardy analysis, once a state court has determined that the state legislature intended cumulative punishments, a federal habeas court must defer to that determination." *Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989).

The Eighth District Court of Appeals considered whether Petitioner's offenses should be merged. *Nunez I* #8 at 267-69. When explaining its decision, the Eighth District Court of Appeals cited ample Ohio case law when determining that the oral and vaginal penetration could be charged as separate rapes. *Id.* at 268-69. Further, it was also explained that Count 9 and Count 10 were properly merged since the charges stemmed from the same course of action. *Id.* The state courts determined that cumulative punishments were intended by the legislature and merged Plaintiff's charges where appropriate. Accordingly, Petitioner's third ground for relief fails.

**4.** **Ground Four**

-16-

Petitioner's fourth ground for relief asserts that his counsel at the re-sentencing was ineffective for failing to present arguments regarding the merger of allied offenses. *Nunez I* #1 at 30. Specifically, Petitioner states that the argument presented in his third ground for relief was not presented by his attorney. *Id.* For the reasons stated above, Petitioner's argument regarding the merger of allied offenses fails to identify any legal error. Petitioner's counsel at his re-sentencing was not required to present arguments that had no merit. Accordingly, Petitioner has failed to show that his counsel was ineffective and his fourth ground for relief is without merit.

### B.     Habeas Petition Filed October 30, 2017 (*Nunez II*)

#### 1.     Ground One

In his first ground for relief, Petitioner asserts that the state's failure to grant the motion for a new trial, or at least hold an evidentiary hearing, violated his rights. *Nunez II* #1-1 at 19. Petitioner claims that new evidence that was material to his defense has emerged since his trial and that this evidence establishes his innocence. *Id.* Respondent contends that Petition is limited to arguments that were presented in the Eighth District Court of Appeals and that any new arguments are procedurally defaulted. *Nunez I* #20 at 20. Continuing, Respondent notes that the Eighth District Court of Appeals denied Petitioner's motion for a new trial as procedurally defaulted. *Id.* Respondent also states that the Eighth District Court of Appeals properly determined that the "new" evidence Petitioner provides was available at the time of his trial. *Id.* at 21.

Petitioner failed to present ground one to the Eighth District Court of Appeals because it was denied as procedurally defaulted since he did not follow the proper procedures. *Nunez I* #20-1 at 13. When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition. *McBee*, 929 F.2d at 265. As explained by the Eighth District Court of Appeals, Petitioner's motion for a new trial was denied by the trial court because he failed to file a motion for leave to file his motion for a new trial. *Nunez I* #20-1 at 13-14. Petitioner never fairly

presented his first ground for relief to the Eighth District Court of Appeals and his first ground for relief is subject to procedural default.[3]

### 2. Ground Two

In his second ground for relief, Petitioner claims that the indictment was fatally defective because it alleged multiple, identical, and undifferentiated counts in violation of the Double Jeopardy Clause and Due Process Clause of the United States Constitution. *Nunez II* #1-1 at 33. Petitioner cites Count 8 and Count 9 as examples of counts that should be merged, but does not explain how the state courts failed to merge any other charges. *Id.* at 33-35. As discussed above, the state courts properly handled the issue of whether Count 8 and Count 9 should be merged. Additionally, Plaintiff did not raise this ground for relief on direct appeal. As stated above, claims not fairly presented to the state courts are procedurally defaulted. Accordingly, Petitioner's second ground for relief fails.

### 3. Ground Three

Petitioner states that during his trial the jury sent out a question asking what happened if it could not reach an unanimous verdict. *Nunez II* #1-1 at 35. Continuing, Petitioner asserts that the answer returned by the trial court was prejudicial and did not meet the standard imposed in Ohio. *Id.* at 36. Respondent contends that Petitioner's claim is not cognizable on federal habeas review because it raises issues concerning only state law. *Nunez I* #20 at 30-31.

Errors in jury instructions give rise to constitutional claims only where a petitioner has shown that the instructions were so infirm that they rendered the entire trial fundamentally unfair. *Henderson v. Kibbe*, 431 U.S. 145 (1977). The question for the Court is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at 72 (internal citation omitted). During Petitioner's trial, the jury

---

[3]Insofar as Petitioner claims that new evidence exists in the form of affidavits and a medical report regarding the examination of N.J., Petitioner fails to show that any of this evidence was not available at the time of his trial. *See Nunez II* #1 at 19-33. In any event, ground one is procedurally defaulted.

-18-

asked what would happen if they could not reach a unanimous agreement. *Nunez v. Coleman*, 1:12CV903, ECF Dkt. #7-5 at 199-200. The trial judge stated that the response to the question would be "because this is a criminal case, the law requires that all twelve of you be in agreement before you can consider that you have reached a verdict." *Id.* at 200. Additionally, when the jurors asked whether the verdict needed to be "unanimous either way," the trial judge stated that the response would be "[t]he answer is yes, the verdict has to be unanimous either way." *Id.* The prosecuting attorney, Petitioner's defense counsel, and Petitioner indicated that there was no objection to the instruction. *Id.* at 200-201.

A review of the transcript of Petitioner's trial shows that the trial judge's jury instruction did not render the trial fundamentally unfair. The trial judge merely informed the jury of what was required of them by law and did not improperly state the law or make a statement that might have an impact on the verdict. Accordingly, Petitioner has failed to show that this jury instruction violates any constitutional right and therefore his third ground for relief is not cognizable.

## VII.     CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned RECOMMENDS that the Court DISMISS Petitioner's petitions for a writ of habeas corpus (*Nunez I* #1 (1:16CV1931); *Nunez II* #1 (1:17CV2325) in their entirety with prejudice.


Date: May 17, 2019                          */s/ George J. Limbert*
                                            George J. Limbert
                                            United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Crim. P. 59. Failure to file objections within the specified time constitutes a WAIVER of the right to appeal the Magistrate Judge's recommendation. *Id.*